UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NOTORIOUS B.I.G. LLC, REPUBLIC MERCHANDISING, INC., and BARRON CLAIBORNE | Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| v. | |
| ICANVAS, INC., KROTO, INC., LEON OKS, BEYOND, INC., THE HOME DEPOT, INC., NORDSTROM, INC., and TARGET CORP. | |
| Defendants. | |

Plaintiffs Notorious B.I.G. LLC ("BIG"), Republic Merchandising, Inc. ("Republic"), and Barron Claiborne ("Mr. Claiborne") (collectively, "Plaintiffs") bring this action against iCanvas, Inc. ("iCanvas"), Kroto, Inc. ("Kroto") (together, the "iCanvas Defendants"), Leon Oks ("Mr. Oks"), Beyond, Inc. ("Beyond"), The Home Depot, Inc. ("Home Depot"), Nordstrom, Inc. ("Nordstrom"), and Target Corp. ("Target") (collectively, "Defendants") for their roles in harming BIG and Republic in contravention of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), the State of New Jersey's common law right of publicity, the State of Illinois' Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, and common law trademark and unjust enrichment laws, as well as in infringing Mr. Claiborne's rights in violation of the Copyright Act, 17 U.S.C. § 101, *et seq*. Plaintiffs advance the action by and through their attorneys, Hart, McLaughlin & Eldridge. Plaintiffs complain and allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including their attorneys' investigation.

## INTRODUCTION

1. BIG is the legal representative of the late hip-hop artist Christopher George Latore Wallace, p/k/a "Notorious B.I.G.," "Biggie," or "Biggie Smalls" ("Mr. Wallace"). Mr. Wallace's music is well-known and appreciated around the world; publications such as *Rolling Stone* have hailed him as "the greatest rapper that ever lived."

2. Republic is an experienced and respected merchandising company that develops, manufactures, markets, and sells products using intellectual property and personality rights relating to Mr. Wallace owned by BIG.

3. Mr. Claiborne is an acclaimed professional photographer. His photographs have, variously, appeared in numerous publications, including *Newsweek*, *The New York Times Magazine*, and *The New Yorker*, and movies, on television and websites, in public exhibitions and gallery shows, and as part of museum and private collections around the world. He is currently represented by the gallerist Todd Merrill. Mr. Claiborne has

received a grant from the National Endowment for the Arts, a highly prestigious honor. His photographs are regularly sold as fine art prints and licenses for their use in various capacities are frequently sought.

4.      Mr. Claiborne's photograph of Mr. Wallace entitled "King of New York" or "K.O.N.Y.," was taken as part of a series in 1997, just three days before Mr. Wallace's death.  The photograph, showing Mr. Wallace wearing a plastic crown in front of a deep red backdrop, is considered to be one of the most iconic photographs of the late Twentieth Century and one of the most famous hip-hop images.  It has been heralded as the "Mona Lisa of Hip Hop."  *See* Exhibit A.

5.      Attesting to the interest in and reverence for Mr. Wallace and the K.O.N.Y. photographs, the plastic crown used in the portraits, which was purchased by Mr. Claiborne for $6.00 in 1997, sold for $595,000.00 at Sotheby's first hip-hop auction in 2020.

6.      BIG's and Republic's diligent planning and management, which has included strategic licensing, has allowed Mr. Wallace's music and story to be enjoyed by millions of people worldwide.

7.      Mr. Wallace's fan base has continued to expand since his passing; his relevance and recognizability have only grown since his death.  Mr. Wallace's persona, name, image, likeness, and artistic works are so well known that they are almost universally and instantly recognizable, even by those born after he died.

8.      Mr. Claiborne's careful stewardship of his K.O.N.Y. photograph series, which has included strategic licensing and a licensing relationship with BIG and Republic, has ensured the photograph's legacy, relevance, value, and enjoyment by the public.

9.      Defendants used Mr. Wallace's persona, name, image, and likeness, as well as several trademarks relating to him, and Mr. Claiborne's K.O.N.Y. series photographs,

for many years, across numerous items, and in multiple ways, without authorization. *See*, *e.g.*, Exhibit B.[1]

10.     Defendants' uses of marks relating to and images of Mr. Wallace have amounted to unfair competition, false advertising, and trademark infringement, violated his right of publicity, and enriched Defendants unjustly.

11.     Defendants' unauthorized uses of photographs from Mr. Claiborne's K.O.N.Y. series have infringed his copyrights, violating his exclusive rights of reproduction, distribution, and display.

12.     Plaintiffs, while only three in number, represent only a small fraction of the victims of a multi-year unlawful campaign the iCanvas Defendants and Mr. Oks have sustained, the activities relating to which demonstrate their complete disregard for celebrities' personality rights, lack of respect for artists' efforts, and disdain for intellectual property law.

13.     From at least 2015 to present, in addition to Mr. Wallace's persona, name, image, likeness, and related trademarks, and Mr. Claiborne's photographs, the iCanvas Defendants and Mr. Oks have apparently used many hundreds of other celebrities' personas, names, images, likenesses, and marks, and artists' works without permission. These additional uses currently include, to identify but a few, images of athletes Tom Brady, Stephen Curry, Kobe Bryant, Lebron James, and Muhammed Ali; and musicians Beyonce, Prince, Jay-Z, Snoop Dog, and LL Cool J. *See*, *e.g.*, Exhibit C.[2]

---

[1] Of note, included in the examples of infringing items contained in Exhibit B are pieces that also infringe on the works of other photographers, such as George Dubose, Dana Lixenberg, and Chris Walter. Plaintiffs provided these examples to iCanvas in their first communication to the company.

[2] A number of the "artists" and "designers" associated with these items were associated with the examples Plaintiffs included in their initial communication with iCanvas. *See*, *e.g.*, *& compare* Exhibit C & Exhibit A  The item using LL Cool J's image also makes use of a photograph by Janette Beckman without permission.

14. Given their experiences, those of certain others contacted, and statements by the iCanvas Defendants, Plaintiffs expect that many of the images of and by others that Defendants used were subject to intellectual property and personality rights protections too, and that Defendants did not obtain authorization to use them either.

15. Notably, and underscoring Mr. Wallace's continued popularity and the immense value of and interest in things relating to "Biggie," out of the many hundreds of celebrities that the iCanvas Defendants sold items relating to, Mr. Wallace ranked eleventh in terms of the number of SKUs—at 108—those Defendants made available for purchase before Plaintiffs contacted them about their unauthorized uses, and nearly half of those options used Mr. Claiborne's K.O.N.Y. series photographs.

16. Further evidencing the popular interest in and value of Mr. Wallace's persona and Mr. Claiborne's K.O.N.Y. series, an item using Mr. Wallace's image as captured in Mr. Claiborne's K.O.N.Y. photographs was one of the first celebrity-based items iCanvas sold, items employing the same were among the relatively small number of celebrity-based items iCanvas retailed through Beyond, Home Depot, Nordstrom, and Target, and, as of the date of this filing, iCanvas is still selling an infringing item using Mr. Claiborne's photograph of Mr. Wallace and two other infringing items using Mr. Wallace's image—these three items also infringe trademarks relating to Mr. Wallace.

17. Defendants specifically chose to use Mr. Wallace's persona, name, image, likeness, and related marks, and Mr. Claiborne's K.O.N.Y. photograph series, in an attempt to capitalize on their fame and extraordinary financial value.

18. Thus, in seeking to profit from using Mr. Wallace's persona, name, image, likeness, and related trademarks, and Mr. Claiborne's K.O.N.Y. series photographs, Defendants have, some willfully and rampantly, violated the Lanham Act, other trademark protections, Mr. Wallace's right of publicity, the Copyright Act, and the law relating to unjust enrichment. The iCanvas Defendants have also violated the UDTPA.

**PARTIES**

19.     Plaintiff Notorious B.I.G. LLC is a Delaware limited liability company that, among other things, owns and controls Mr. Wallace's intellectual property and personality rights.

20.     Plaintiff Republic Merchandising, Inc. is a registered California company with its principal place of business in Encino, California.   Republic manages merchandising relating to Mr. Wallace for BIG.

21.     Plaintiff Barron Claiborne is a professional photographer and has been for over 40 years.  He is a resident of New York, New York.

22.     Defendant iCanvas, Inc. sells canvas prints.  It is closely associated with Defendant Kroto, Inc.  iCanvas is duly organized under the laws of Illinois with its principal place of business in Morton Grove, Illinois.

23.     iCanvas is a successful but relatively small privately held company.  While it is estimated that the company generates many millions of dollars a year in revenue, it employs relatively few employees.

24.     iCanvas has registered numerous copyrights.  Its first registration was completed in 2015.  At all relevant times, iCanvas has owned, operated, and asserted copyright control of the website at the following URL: https://www.icanvas.com.

25.     Defendant Kroto, Inc. is duly organized under the laws of Illinois with its principal place of business in Morton Grove, Illinois.

26.     Kroto registered iCanvas in Illinois.  Kroto has also registered several trademarks relating to iCanvas with the United States Patent and Trademark Office ("USPTO").

27.     Kroto is a relatively small privately held company, employing relatively few employees.

28.     Defendant Leon Oks is the founder, chairman, and principal officer of iCanvas and Kroto.  He assists in actively managing those companies' day-to-day

operations, supervising their business relationships, employees, sales offerings, and marketing. Mr. Oks resides in Morton Grove, Illinois.

29. Plaintiffs anticipate adding defendants to this action when Plaintiffs become aware of the names and capacities of other individuals involved in the day-to-day management of iCanvas.

30. Defendant Beyond, Inc. ("Beyond") principally sells kitchen and homewares. Beyond was previously named Overstock, Inc. In 2023, the company changed its name after purchasing a portion of Bed Bath & Beyond, Inc. ("Bed Bath"), which had filed for bankruptcy. Overstock was registered in Utah and headquartered in Salt Lake City. When Overstock changed its name to Beyond, it duly organized under the laws of Delaware and moved its headquarters to Midvale, Utah. At all relevant times, Bed Bath/Overstock/Beyond has owned, operated, and asserted copyright control of the websites at the following URLs: https://www.bedbathandbeyond.com and https://www.overstock.com.

31. Defendant The Home Depot, Inc. is duly organized under the laws of Delaware and is headquartered in Atlanta, Georgia. It retails building and home improvement supplies. At all relevant times, Home Depot has owned, operated, and asserted copyright control of the website at the following URL: https://www.homedepot.com.

32. Defendant Nordstrom, Inc. operates department stores. It is registered in Washington state and is headquartered in Seattle. At all relevant times, Nordstrom or Nordstrom Rack, which Nordstrom wholly owns, has owned, operated, and asserted copyright control of the website at the following URL: https://www.nordstromrack.com.

33. Defendant Target Corp. is duly organized under the law of Minnesota and is headquartered in Minneapolis. It operates department stores. At all relevant times, Target has owned, operated, and asserted copyright control of the website at the following URL: https://www.target.com.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), because the action involves claims arising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and the Copyright Act, 17 U.S.C. § 101, *et seq*.

35.     The Court also has original jurisdiction under 28 U.S.C. § 1332, as the amounts in controversy exceed the specified thresholds and the action is between diverse parties.

36.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law claims raised, because they relate to the Lanham Act and Copyright Act claims to a great extent.

37.     This Court has personal jurisdiction over Defendants because they do, and at all times relevant to this action did, business in the State of Illinois and have expressly directed their actions at Illinois, and Plaintiffs' claims relate to those same actions.

38.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiffs' claims occurred in the District.

## FACTUAL BACKGROUND

39.     ICanvas improves, produces, advertises, markets, sells, and ships canvas prints "artists" and "designers" provide it.  In the course of doing so, iCanvas has provided a platform that allows serial infringers of intellectual property and personality rights to amplify their unauthorized uses, and become a super infringer itself, as its myriad unlawful uses of Mr. Wallace's name, image, likeness, and related trademarks, and Mr. Claiborne's K.O.N.Y. series photographs, as well as property relating to other celebrities and artists, attest.

40.     Not content to sell infringing items through its website only, iCanvas formed vendor relationships with Beyond, Home Depot, Nordstrom, and Target, so that it could make such available for purchase through these companies' websites as well,

including items using Mr. Wallace's image, likeness, and related marks, and Mr. Claiborne's photographs, without authorization.

41.     Beyond, Home Depot, Nordstrom, and Target permitted iCanvas-branded items infringing Mr. Wallace's and Mr. Claiborne's respective intellectual property and personality rights to be sold via their websites and advertised and marketed those items. *See*, *e.g.*, Exhibit D.

42.     In this way, iCanvas, Beyond, Home Depot, Nordstrom, and Target, as well as Mr. Oks and other officers and senior managers of iCanvas, have violated the law.

## A.    PLAINTIFFS' OWNERSHIP OF THE RELEVANT PERSONALITY AND INTELLECTUAL PROPERTY RIGHTS

43.     BIG owns Mr. Wallace's intellectual property and personality rights, including certain related trademark rights, the rights of association and sponsorship, and the right of publicity in and to the persona, name, image, and likeness of Mr. Wallace.

44.     Mr. Wallace died in 1997, while domiciled in New Jersey.  His estate was probated in Bergen County, New Jersey.

45.     Mr. Wallace's estate, by the action of its co-executors,  Mr. Wallace's mother, Valetta Wallace ("Ms. Wallace"), and his surviving spouse, Faith Evans ("Ms. Evans"), transferred these rights to BIG.

46.     BIG is the successor-in-interest to Mr. Wallace's estate. *See* Exhibit E.

47.     Since its formation, BIG has owned and controlled the intellectual property and personality rights Mr. Wallace's estate encompassed.

48.     Together, Ms. Wallace and Ms. Evans manage BIG with the assistance of Wayne Barrow, a long-time friend of Mr. Wallace and his family.

49.     Mr. Claiborne took the K.O.N.Y. series of photographs of Mr. Wallace just days before Mr. Wallace's death in March 1997.  True and correct copies of the photographs are attached as Exhibit A.

50.     Mr. Claiborne is the author of those photographs and has at all times been the sole owner of all right, title, and interest in and to the photographs, including the copyrights.

51.     Mr. Boyd's K.O.N.Y. photograph series was registered with the United States Copyright Office and was given Copyright Registration Number VA 1-240-855, effective December 24, 2003.

## B.     DEFENDANTS' INFRINGING ACTIVITIES

52.     Defendants have made commercial use of Plaintiffs' intellectual property and personality rights without permission, infringing on those rights for their own financial gain.

53.     ICanvas "partner[ed] with [] artists," curat[ing] a [] selection . . . of art" using Mr. Wallace's name, image, likeness, related marks, and Mr. Claiborne's K.O.N.Y. photographs without authorization. *See* https://www.icanvas.com (2023, 2025). As part of this process, "artists" and "designers" provided, apparently after entering into licensing arrangements with iCanvas, pieces infringing on Mr. Wallace's and Mr. Claiborne's respective intellectual property and personality rights to the company for its use.

54.     From there, iCanvas' "team of designers carefully review[ed] each piece" and used "high-quality techniques" to "fix" the pieces and ensure "high-quality resolution." *See* https://www.icanvas.com (2023).

55.     Next, iCanvas "print[ed], hand-stretche[ed], and assemble[ed] all the pieces [infringing rights relating to Mr. Wallace and Mr. Claiborne] at its Morton Grove, IL facility," using "poly-cotton canvas," "fade and water-resistant Epson ink," and "kiln dried North American Pine stretcher bars." *See* https://www.icanvas.com (2023).

56.     Then iCanvas "package[ed]" the pieces with "easy-to-use instructions, puncture resistant box[es, and] strong corner protection." *See* https://www.icanvas.com (2023).

9

57.     In conjunction with these steps, iCanvas displayed the infringing pieces, sold them on its website, accepted payments for the infringing pieces, advertised and marketed the infringing pieces, shipped them to consumers, and provided customer service relating to them.

58.     ICanvas also formed vendor relationships with large, prominent retailers, including Defendants Beyond, Home Depot, Nordstrom, and Target, and those companies made iCanvas-branded pieces using BIG's and Mr. Claiborne's property without permission available for purchase on their websites and advertised and marketed them.

59.     Defendants infringing and unlawful uses of Mr. Wallace's persona, name, image, likeness, and related marks, and Mr. Claiborne's K.O.N.Y. photographs, were effectuated through the process described above.

60.     Additionally, iCanvas in advertising and marketing the pieces utilizing BIG's and Mr. Claiborne's property, used infringing images of Mr. Wallace in banners on its website and trademarks relating to him in search and sort bars, and displayed items making infringing use of his image and marks, and Mr. Claiborne's copyrights, in "best seller" and "music—top selections" lists.

61.     In early 2023, Plaintiffs contacted iCanvas and the other Defendants regarding their unlawful uses of Mr. Wallace's persona, name, image, likeness, and related trademarks, and Mr. Claiborne's copyrights, requesting Defendants stop using their property without authorization.

62.     After a few weeks, ICanvas removed from its website the examples of specific infringing items Plaintiffs identified in their initial communication but not other pieces that clearly infringed on intellectual property and personality rights relating to Mr. Wallace and Mr. Claiborne. *See*, *e.g*., Exhibit F.

63. ICanvas did not respond to Plaintiffs' requests for a detailed accounting and contact information for the "artists" and "designers" that initially provided the company the infringing items.

64. Subsequent investigation revealed that iCanvas had been using Mr. Wallace's persona, name, image, and likeness, and related marks, as well as Mr. Claiborne's K.O.N.Y. series photographs without permission since at least 2015.

65. Moreover, as of the date of this filing, iCanvas continues to sell items that infringe Mr. Wallace's personality rights and intellectual property rights relating to him and Mr. Claiborne, including three items associated with the "artists," Cristian Mielu and Katia Skye, who Plaintiffs specifically identified as having provided iCanvas infringing pieces in its first communication to the company, as well as many other items that infringe the rights of other celebrities and artists. *See*, *e.g.*, *& compare* Exhibit G & Exhibit A.

66. ICanvas either has not had a procedure for vetting the pieces it received from "artists" and "designers" for intellectual property and personality rights clearance purposes, has had a wholly ineffective one, or has had one persons at the company simply have not used.

67. This is so despite iCanvas being put on notice as early as 2016 that it was using items that infringed others' intellectual property rights.

68. While Home Depot, Nordstrom, and Target removed items infringing rights relating to Mr. Wallace and Mr. Claiborne that Plaintiffs contacted them about in 2023, Beyond has not—several infringing iCanvas-branded items are still viewable on bedbathandbeyond.com. *See*, *e.g.*, Exhibit H.[3]

---

[3] At present, Beyond is also selling an item on bedbathandbeyond.com by a brand other than iCanvas that uses Mr. Wallace's name, image, likeness, and related trademarks, as well as Mr. Claiborne's K.O.N.Y. photographs, without permission. See Exhibit I.

69.     ICanvas, and Beyond, had ample knowledge that their actions vis-à-vis Plaintiffs were wrong or certainly had reason to investigate whether their behavior was infringing or unlawful.

70.     As recounted above, Defendants' actions amount to multiple, sustained, and, in some instances, willful violations of Mr. Wallace's and Mr. Claiborne's intellectual property and personality rights.

## C.      HARM TO PLAINTIFFS AND MONETARY VALUE OF THE CONDUCT AT ISSUE

71.     Defendants, through their conduct, have caused, and will continue to cause, substantial irreparable injury to Mr. Wallace's and Mr. Claiborne's reputation and marketability, decreasing the number and value of future endorsement, collaboration, and partnership opportunities available to BIG, Republic, and Mr. Claiborne.

72.     Further, Defendants have caused injury to BIG and Republic by using Mr. Wallace's persona, name, image, likeness, and related marks, and to Mr. Claiborne by using his K.O.N.Y. photographs, without providing compensation at fair market value in return.

73.     BIG has authorized Mr. Wallace's persona, name, image, likeness, and related trademarks to be used in connection with certain select efforts, receiving substantial licensing fees for permitting such uses.

74.     The typical licensing fee BIG would anticipate receiving for permitting property relating to Mr. Wallace to be used as employed by Defendants—unlimited SKUs, production numbers, territory, and extensions, and no design signoff—ranges from the many tens to hundreds of thousands of dollars per year guaranteed.

75.     With regard to the use of Mr. Wallace's intellectual property and personality rights in connection with merchandise, BIG has provided an exclusive license to Republic.

76. Republic is actively engaged in marketing and selling products incorporating Mr. Wallace's persona, image, likeness, and trademarks in ways that compete with Defendants.

77. Defendants' actions jeopardize and diminish the value of Republic's exclusive license, which, in turn, reduces the value of Mr. Wallace's intellectual property and personality rights overall.

78. The typical licensing fee Mr. Claiborne would anticipate receiving for allowing his K.O.N.Y. photographs to be used by Defendants the way they have—unlimited SKUs, production numbers, territory, and extensions, and no design signoff—amounts to many tens of thousands of dollars per year guaranteed.

79. Ultimately, the fair market value of Defendants' infringing uses and the harm Defendants have caused to the value of Plaintiffs' intellectual property and personality rights, which will form the basis of Plaintiffs' actual damages, will be determined after discovery and at trial.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unfair Competition and False Advertising
### 15 U.S.C. § 1125(a)
### (All Entity Defendants)

80. Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 79 above.

81. ICanvas, Beyond, Home Depot, Nordstrom, and Target, advertised, marketed, sold, and distributed items using Mr. Wallace's image and likeness throughout the United States and the rest of the world by making them available for purchase online.

82. In so doing, those Defendants intentionally and willfully created the false impression that Mr. Wallace and BIG are associated with, or that BIG authorized use of Mr. Wallace's image and likeness relating to certain iCanvas-branded items and iCanvas, Beyond, Home Depot, Nordstrom, and Target.

83.     That impression is entirely inaccurate and misleading. BIG has never provided permission to iCanvas to use Mr. Wallace's image or likeness, or to Beyond, Home Depot, Nordstrom or Target to use such in connection with canvas prints.

84.     These Defendants, therefore, used Mr. Wallace's image and likeness to advertise, market, sell, and distribute items in commerce in a manner that misled, deceived, and confused the public into believing iCanvas, Beyond, Home Depot, Nordstrom, and Target, as well as their commercial activities, were in some way endorsed, sanctioned by, or affiliated with Mr. Wallace or BIG in relation to the items in question.

85.     The entity Defendants' actions were also purposefully directed at undercutting and decreasing BIG's and Republic's legitimate business interests regarding intellectual property and personality rights relating to Mr. Wallace, and thus constitute unfair competition through false advertising.

86.     Those Defendants' acts complained of herein violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     The foregoing actions of the entity Defendants, and particularly iCanvas and Beyond, in appropriating Mr. Wallace's image and likeness were willful, intentional, and purposeful, in reckless disregard of and indifference to BIG's rights. Such actions were also fraudulent insofar as these Defendants deliberately took part in conduct to confuse the public concerning Mr. Wallace's or BIG's authorization or involvement with iCanvas-branded items.

88.     As a direct and proximate cause of the entity Defendants' unlawful behavior, BIG and Republic have suffered and continue to suffer significant injury. Consequently, pursuant to 15 U.S.C. § 1117, they are entitled to damages, profits, attorneys' fees, and costs.

89.     ICanvas' and Beyond's conduct, as described above, is causing, and unless enjoined and restrained by this Court, will continue to cause BIG and Republic irreparable injury that cannot be fully compensated by or measured in money damages. BIG and

Republic have no adequate remedy at law. ICanvas' and Beyond's pattern and practice of infringement, which has continued despite them being put on notice of their unlawful activity, reduces the value of BIG's intellectual property and personality rights relating to Mr. Wallace, and Republic's license to use such.

**SECOND CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. §§ 1114, 1125(a); Illinois Common Law**
**(All Entity Defendants)**

90.     Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 89 above.

91.     BIG owns a registered trademark in the name "The Notorious BIG" for International Class 35 relating to merchandise and online retail store services featuring merchandise. *See* USPTO Reg No. 6,559,419, (Nov. 16, 2021).

92.     BIG also owns unregistered trademarks in the names "Biggie" and "Biggie Smalls" for use in commerce in connection with recorded music, apparel, and merchandise. The marks "Biggie" and "Biggie Smalls" are clearly source identifiers for Mr. Wallace.

93.     Neither BIG nor Republic authorized the entity Defendants' use of these trademarks. Those Defendants' use of the trademarks is likely to cause confusion, mistake, or deception. Indeed, it is alleged Defendants' unlawful appropriation of the trademarks has caused actual confusion in the marketplace.

94.     ICanvas, Beyond, Home Depot, Nordstrom, and Target have advertised, marketed, sold, and distributed products using the trademarks.

95.     Due to these Defendants' acts of infringement, BIG and Republic have suffered substantial damages to their businesses, as well as general and special damages.

96.     The entity Defendants have obtained direct and indirect profits they would not otherwise have realized but for their acts of infringement as alleged herein. As such,

BIG and Republic are entitled to disgorgement of those Defendants' profits directly and indirectly attributable to their infringement of the trademarks.

97. ICanvas' and Beyond's exploitation of BIG's trademarks has been knowing, intentional, wanton, and willful, entitling BIG and Republic to treble damages, profits, attorneys' fees, and costs.

98. ICanvas' and Beyond's conduct, as described above, is causing, and unless enjoined and restrained by this Court, will continue to cause BIG and Republic irreparable injury that cannot be fully compensated by or measured in money damages. BIG and Republic have no adequate remedy at law. ICanvas' and Beyond's pattern and practice of infringement, which has continued despite them being put on notice of their unlawful activity, reduces the value of BIG's intellectual property and personality rights relating to Mr. Wallace, and Republic's license to use such.

**THIRD CAUSE OF ACTION**
**Violation of Right of Publicity**
**New Jersey Common Law**
**(All Entity Defendants)**

99. Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 98 above.

100. Multiple federal cases explain the protections New Jersey's common law right of publicity provides.

101. The entity Defendants used Mr. Wallace's name, image, and likeness on the items at issue and in the course of advertising, marketing, and selling them. Their uses were strictly commercial, being for trade and promotion, and neither related to nor provided any public, news, or historical interest or value.

102. BIG did not consent to any use of Mr. Wallace's name, image, or likeness by iCanvas, Beyond, Home Depot, Nordstrom, or Target in relation to the canvas prints in question. These Defendants never even contacted BIG or Republic with respect to using Mr. Wallace's name, image, or likeness.

16

103.    As alleged above, iCanvas and the other entity Defendants appropriated BIG's right to control the commercial value and exploitation of Mr. Wallace's name, image, and likeness, and violated BIG's right to prevent others from unfairly using such for their own commercial gain.

104.    ICanvas', Beyond's, Home Depot's, Nordstrom's, and Target's conduct, which, with respect to iCanvas and Beyond, was willful, deliberate, and in conscious disregard of BIG's rights, violated New Jersey's right of publicity law.

105.    As a direct and proximate cause of those Defendants' unlawful behavior, BIG and Republic have suffered and continue to suffer significant injury.  Consequently, pursuant to New Jersey's right of publicity law, BIG and Republic are entitled to damages and any profits, gains, and advantages resulting from the entity Defendants' unlawful actions.

106.    Based on the allegations presented herein, and other facts to be developed through discovery, BIG and Republic also seek punitive damages for iCanvas' violation of New Jersey's right of publicity law.

107.    ICanvas' and Beyond's conduct, as described above, is causing, and unless enjoined and restrained by this Court, will continue to cause BIG and Republic irreparable injury that cannot be fully compensated by or measured in money damages.  BIG and Republic have no adequate remedy at law.  ICanvas' and Beyond's pattern and practice of infringement, which has continued despite them being put on notice of their unlawful activity, reduces the value of BIG's intellectual property and personality rights relating to Mr. Wallace, and Republic's license to use such.

## FOURTH CAUSE OF ACTION
## Unfair and Deceptive Trade Practices
### 815 Ill. Comp. Stat. 510/2
### (iCanvas Defendants)

108.    Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 107 above.

109.    ICanvas displayed, advertised, marketed, and sold items using Mr. Wallace's name, image, likeness, and related marks, throughout the United States and the rest of the world.

110.    In so doing, iCanvas acted deceptively—intentionally, willfully, and in bad faith—to create the false impression Mr. Wallace and BIG are associated with, or that BIG authorized use of Mr. Wallace's name, image, and likeness relating to, the items at issue and iCanvas.  ICanvas intended the public to rely on that impression.

111.    This impression is entirely inaccurate and misleading.  BIG has never provided permission to iCanvas to use Mr. Wallace's name, image, likeness or related marks in connection with canvas prints or otherwise.

112.    ICanvas, therefore, used Mr. Wallace's name, image, likeness, and trademarks to display, advertise, market, and sell goods in commerce in a manner that misled, deceived, and confused the public into believing iCanvas, as well as its commercial activities, were in some way sponsored, approved, or endorsed by, or associated or affiliated with Mr. Wallace or BIG.

113.    ICanvas' conduct complained of herein violated the UDTPA.

114.    As a direct and proximate cause of iCanvas' unlawful behavior, BIG and Republic have suffered and continue to suffer significant injury.  Consequently, pursuant to the UDTPA, BIG and Republic are entitled to damages and any profits, gains, and advantages resulting from iCanvas' unlawful actions.

115.    Based on the allegations presented above, and other facts to be developed through discovery, BIG and Republic also seek punitive damages for iCanvas' violation of the UDTPA.

116.     ICanvas' conduct, as described above, is causing, and unless enjoined and restrained by this Court, will continue to cause BIG and Republic irreparable injury that cannot be fully compensated by or measured in money damages.  BIG and Republic have no adequate remedy at law.  ICanvas pattern and practice of infringement, which has

continued despite the company being put on notice of its unlawful activity, reduces the value of BIG's intellectual property and personality rights relating to Mr. Wallace, and Republic's license to use such.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### Illinois Common Law
### (All Defendants)

117. Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 116 above.

118. As a result of Defendants' conduct complained of herein, they have been unjustly enriched at BIG's and Republic's expense by receiving benefits from using Mr. Wallace's persona, name, image, and likeness without authorization.

119. Such constitutes violation of Illinois' common law unjust enrichment law.

120. As a direct and proximate cause of Defendants' actions, they have received unjust gains at BIG's and Republic's expense. Consequently, pursuant to Illinois' unjust enrichment law, BIG and Republic are entitled to the value of the benefits that have been conferred on Defendants through their behavior.

## SIXTH CAUSE OF ACTION
### Copyright Infringement
### 17 U.S.C. §§ 106, 501
### (All Entity Defendants)

121. Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 120 above.

122. The entity Defendants infringed Mr. Claiborne's copyrights in his K.O.N.Y. series photographs by, variously, displaying, reproducing, selling, and distributing items using the photographs without his authorization.

123. Those Defendants acts complained of herein constitute infringement of Mr. Claiborne's copyrights and exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

19

124.    The foregoing acts of infringement by iCanvas and Beyond have been willful, intentional, and purposeful, in reckless disregard of and indifference to Mr. Claiborne's rights.

125.    As a direct and proximate cause of infringement by iCanvas, Beyond, Home Depot, Nordstrom, and Target of Mr. Claiborne's copyrights and exclusive rights under copyright, he is entitled to damages and these Defendants' profits pursuant to 17 U.S.C. § 504(b).

126.    ICanvas' and Beyond's conduct, as described above, is causing, and unless enjoined and restrained by this Court, will continue to cause Mr. Claiborne irreparable injury that cannot be fully compensated by or measured in money damages.  Mr. Claiborne has no adequate remedy at law.  ICanvas' and Beyond's pattern and practice of infringement, which has continued despite them being put on notice of their unlawful activity, reduces the value of Mr. Claiborne's intellectual property relating to the K.O.N.Y. photographs.

****

127.    Plaintiffs reallege and incorporate by reference herein all allegations previously made in paragraphs 1 through 126 above.

128.    Mr. Oks is the founder, chairman, and principal officer of iCanvas.

129.    He was aware, or absent reckless disregard for the truth should have been aware, iCanvas was partnering with "artists" and "designers," and improving, reproducing, manufacturing, advertising, marketing, selling, and distributing pieces in a manner that used property relating to Mr. Wallace and Mr. Claiborne unlawfully, including by (a) using Mr. Wallace's persona, name, image, likeness, and related trademarks without authorization, and, in doing so, appropriating such intentionally and willfully to market, sell, and distribute goods in commerce in a way that misled, deceived, and confused the public into believing iCanvas, as well as its commercial activities, were in some way endorsed, sanctioned by, or affiliated with Mr. Wallace or BIG, (b) using Mr.

20

Wallace's persona, name, image, likeness, and related marks in a way purposefully directed at undercutting and decreasing BIG's and Republic's legitimate business interests regarding intellectual property and personality rights relating to Mr. Wallace, and (c) displaying, reproducing, and distributing Mr. Wallace's image and likeness, and Mr. Claiborne's K.O.N.Y. series photographs, without permission.

130.    Not only did he know of such activities by iCanvas but he was also directly involved in furthering them by, among other things, managing the enhancement, production, marketing, sale, and distribution of the infringing items, and forming relationships that allowed them to be sold through Beyond's, Home Depot's, Nordstrom's, and Target's websites.

131.    Mr. Oks also encouraged, facilitated, and supervised these actions by employees of iCanvas.

132.    Furthermore, he provided at least some of the computers, printers, software, work space, and supplies necessary to complete these activities.

133.    Mr. Oks positions within iCanvas gave him the right and ability to control and supervise the conduct carried out by iCanvas, and he declined to exercise his rights and abilities to stop or limit iCanvas' directly infringing conduct.

134.    Mr. Oks, by nature of being the founder, chairman, and principal officer of iCanvas benefitted financially from iCanvas' directly infringing activities herein described.

135.    Because Mr. Oks was involved in iCanvas' behavior in the manner and possessed such rights and abilities as set forth above, and benefitted from the directly infringing activities of iCanvas, Plaintiffs are, based on the concepts of contributory and vicarious infringement, entitled to damages, profits, attorneys' fees, and costs from him as an individual to the same extent they are recoverable from the iCanvas Defendants for unfair competition and false advertising, trademark infringement, violation of the right of publicity, and copyright infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, and their respective partners, agents, and employees, and any and all persons in active concert of participation with Defendants, and each of their heirs, executors, administrators, successors, licensees, officers, directors, employees, agents, shareholders, managers, representatives, consultants, and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing as follows:

a. Actual damages and treble damages from Defendants, jointly and severally where appropriate, for violating, including willfully, the Lanham Act;

b. Actual and punitive damages from Defendants, jointly and severally where appropriate, for violating the right of publicity;

c. Actual and punitive damages from the iCanvas Defendants for violating the UDTPA;

d. The greater of actual damages or enhanced statutory damages from Defendants, jointly and severally where appropriate, for violating Mr. Claiborne's copyrights;

e. All damages requested herein, including direct, compensatory, and incidental damages;

f. The value of the unjust gains conferred on Defendants from violating intellectual property and personality rights relating to Mr. Wallace and Mr. Claiborne;

g. An accounting of Defendants' uses, views, gains, revenues, and profits, as well Plaintiffs' damages, resulting from Defendants' wrongful conduct;

h. A disgorgement of Defendants' profits from violating intellectual property and personality rights relating to Mr. Wallace and Mr. Claiborne;

i. An injunction, barring permanently iCanvas and Beyond from engaging in, or assisting, aiding, or abetting, any other person or entity in the marketing, promoting, offering, rendering, selling, or other use in commerce of any products bearing Mr. Wallace's persona, name, image, or likeness, or the trademarks associated with him belonging to BIG;

j. Plaintiffs' attorneys' fees and costs incurred in this action;

k. Pre- and post-judgment interest; and

l. Any other relief that this this Court deems just and proper.

Dated: February 4, 2025        Respectfully submitted,


By:    */s/ Steven Hart*
       Steven A. Hart

Steven A. Hart
HART, MCLAUGHLIN & ELDRIDGE
1 South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com

Jason Fisher (Pro Hac Pending)
Peter Roldan (Pro Hac Pending)
EMERGENT LLP
155 Montgomery St, Suite 300
San Francisco, CA 94104
Jason@emergent.law
Peter@emergent.law

Attorneys for Plaintiffs
NOTORIOUS B.I.G. LLC,
REPUBLIC MERCHANDISING, INC.,
and BARRON CLAIBORNE

## **DEMAND FOR JURY TRIAL**

Plaintiffs Notorious B.I.G. LLC, Republic Merchandising, Inc., and Barron Claiborne demand a jury trial on all issues triable to a jury in this matter.

Dated: February 4, 2025          Respectfully submitted,


By:   */s/ Steven Hart* _____

Steven A. Hart
HART, MCLAUGHLIN & ELDRIDGE
1 South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com

Jason Fisher (Pro Hac Pending)
Peter Roldan (Pro Hac Pending)
EMERGENT LLP
155 Montgomery St, Suite 300
San Francisco, CA 94104
Jason@emergent.law
Peter@emergent.law

Attorneys for Plaintiffs
NOTORIOUS B.I.G. LLC,
REPUBLIC MERCHANDISING, INC.,
and BARRON CLAIBORNE